## LARS A. HOLTAN v. ANNA FISCHER AND OTHERS.[1]

July 7, 1944.

No. 33,754.

[1]Reported in 15 N. W. (2d) 206.

*A. H. Clemens,* for appellant.

*A. J. Rockne,* for respondent.

MAGNEY, JUSTICE.

On September 20, 1913, one Amil Fischer, a resident of Goodhue county, died intestate. He left surviving him his widow, defendant Anna Fischer, then 43 years of age and now 74, and two children, defendants Arthur Fischer, then 16 years of age, and Clara Summerfield, then 14 years of age, who were his sole and only heirs at law. Defendant Herman Summerfield is the husband of Clara.

At the time of his death, Amil was the owner of a 150-acre farm, 70 acres of which constituted the homestead. On the farm were farm animals and machinery. He also was the owner of cash in banks evidenced by certificates of deposit amounting to $3,695. After Amil's death, the survivors continued to live on the farm and operate it. During the year 1920, after the son and daughter had attained majority, Anna, the widow, petitioned the probate court of Goodhue county for a decree of descent of all the real estate owned by Amil at the time of his death. This was thereupon duly decreed to her and to Arthur and Clara, the son and daughter. On January 31, 1939, upon petition of Clara, letters of administration upon the estate of Amil were duly issued to plaintiff, who thereupon qualified.

On September 7, 1939, plaintiff, as such administrator, brought this action against Anna, Arthur, and Clara and the latter's husband, alleging that they had taken possession of and converted the personal property on the farm at the time of Amil's death, together with the certificates of deposit. A demurrer to the com-

plaint was overruled. Clara and her husband defaulted, but their codefendants answered, setting out that the cause of action did not accrue within seven years before the commencement of the action and that it was not commenced within six months after the appointment of the administrator. Anna further alleged that she paid the expenses of last illness and funeral, caused a monument to be erected at the grave of the deceased, and within a year paid all outstanding claims against decedent. Anna and Arthur in their answer denied that they had converted any personal property belonging to Amil at the time of his death and alleged that after his death this personal property became the property of his sole heirs. The court found that Anna had converted the certificates of deposit and ordered judgment against her for $3,695, with interest thereon from September 20, 1913, at four percent. She appeals from the order denying her motion for amended findings or a new trial.

It is evident from the record that Clara instigated this litigation. In 1922, she and her husband received $2,000 from her mother. At the same time, Arthur, the son, also received $2,000. The mother claimed these payments were loans, and the daughter claimed that the money received by her was a gift. The mother brought suit against the daughter and recovered. Judgment was entered against Clara. The homestead was sold in partition suit and Clara's share applied on the judgment by levy. The partition action was completed in 1940. Except for a small balance, the judgment has now been paid. Disappointed, to put it mildly, in the result of that litigation, Clara petitioned the probate court for the appointment of an administrator of her father's estate. In the instant action, which followed his appointment, the court found that the loan to Arthur had been repaid.

The trial court determined that, as to the farm machinery, farm animals, and other personal property on the premises at the time of the death of Amil, his heirs had dispensed with the formal administration by an amicable settlement of their rights and the distribution of the property. But, as to the certificates of deposit

totaling $3,695, the court held that there had been no amicable settlement of their rights and that no distribution of such certificates or their proceeds had been made.

■  The rule in this state is that where there are no creditors or where their claims are barred by the statute of limitations because not presented to the probate court within the time limited for that purpose, the heirs entitled to the estate may dispense with the formal administration by an amicable settlement of their rights and the distribution of their property. It was so stated by this court in Granger v. Harriman, 89 Minn. 303, 94 N. W. 869. In an earlier case, Cooper v. Hayward, 71 Minn. 374, 74 N. W. 152, 70 A. S. R. 330, this court held:

"Where, before the appointment of an administrator, the personal property left by the intestate is disposed of by one who it conclusively appears is the sole heir and distributee, and it also conclusively appears that there are no debts to be proved against the estate, * * * an administrator, subsequently appointed on the petition of such sole distributee, cannot recover the property so disposed of."

In Barnes v. Verry, 174 Minn. 173, 218 N. W. 551, this court held valid and binding a written agreement entered into between all the heirs of a decedent, after all debts and expenses of administration had been paid, which was made for the purpose of settling disputes among them so that the estate might be closed and which provided for the distribution of the assets among them and transferred to one of them a specific item of such assets. It was there stated (174 Minn. 177, 218 N. W. 552):

"* * * At the time that agreement was made all debts and expenses of administration had been paid, and the administratrix as such had no further claim or rights in the property. It was the property of the heirs and subject to disposition by them as they saw fit. Even without administration, personal property vests in the heirs where there are no debts. Granger v. Harriman, 89 Minn.

303, 94 N. W. 869. As stated in Vail v. Anderson, 61 Minn. 552, 554, 64 N. W. 47:

" 'When all claims and demands were paid, including the expenses of administration, the heir at law, * * * if living, would become the sole beneficiary, and, as such, entitled to all that remained.' "

■ It conclusively appears here that Anna, Arthur, and Clara are the sole heirs at law of Amil. It also conclusively appears that there are no debts to be proved against the estate. As we have already stated, the trial court found that as to all the personal property owned by decedent at the time of his death, except the certificates of deposit, such heirs had dispensed with the formal administration by an amicable settlement and a distribution of the property. We think this holds equally true as to the certificates of deposit. The facts show that each of the heirs has received his or her share of the estate and, over a long period, has acted upon and acquiesced in the distribution.

Plaintiff claims that the total value of all the personal property on the farm at the time of Amil's death was about $2,000. As disclosed by the testimony, it could not have exceeded this amount. The value of the certificates of deposit was $3,695. Anna, the widow, within a year after Amil's death, paid the funeral expenses, erected a monument, and paid two claims totaling $400 against her deceased husband. The total amount of such payments was $857. After deducting this amount and the widow's allowance of $500, there remained only $643 to be distributed to the three heirs out of the personal property, valued liberally at $2,000. Clara's share would have been $214.66. She admits that at the time of her marriage she received $250 in Liberty bonds, one horse, which she sold for $100, two cows, and over $500 in cash with which to buy a Ford car. In addition, she received $100 in cash as a wedding gift, together with clothing and bedding. In 1922, Clara received from her mother $1,333.33, representing one-half of the mother's share in the 80-acre tract, which was not a part of the homestead. Arthur received the other half. Clara admits receiving this amount. Thus,

for her interest in the personal property owned by Amil at the time of his death, amounting to $4,338, after deducting the widow's allowance of $500 and the payments made by her mother for funeral and other expenses totaling $857, as detailed above, Clara has received from her mother over $2,200, a considerable sum in excess of the amount she was entitled to. This calculation is based on her own admissions. The mother claims the amount she gave Clara was substantially greater. In view of these facts, it cannot be said that Anna converted to her own use the certificates of deposit or their proceeds. Anna did more for her daughter than she was required to do. Clara never indicated to her mother that she had anything more coming from her father's estate, and she acquiesced in the distribution of all the personal property from the time she received the $1,333.33, which was 17 years prior to the commencement of this action in 1939. Clara was asked:

"Q. Did you at any time ever have any conversation from that day on, that is, 1922 I think it was, in which you asked your mother for a further share in your father's estate?

\* \* \* \* \*

"A. In reference to personal property?
"Q. Yes.
"A. No."

The trial court found: "The evidence does not disclose what disposal was made of withdrawals from the certificates." It is clear that Anna turned over to her daughter a sum greatly in excess of Clara's share in her father's estate, and it is immaterial what disposition was made of the withdrawals from the certificates of deposit. She received more than the equivalent of her interest in the certificates of deposit. Plaintiff's counsel admits that this action is brought to obtain possession of the certificates of deposit for the purpose of administration only. He acknowledges the rule as stated in Glencoe Ditching Co. v. Martin, 148 Minn. 176, 177, 181 N. W. 108, 109:

"\* \* \* He [administrator] is for most purposes only a custodi-

an during the period of administration of the estate and for purposes of administration only."

Since the estate has already been distributed, as has been shown, it should not be, and it is not necessary, to collect the assets from the widow simply for the purpose of redistributing them.

■ Anna also contends that plaintiff's cause of action is barred by the statute of limitations. Here, the claim arose and accrued after the death of Amil. The question has not arisen in Minnesota. There is an irreconcilable conflict of authority on this question. The trial court's holding in the case, that the statute does not begin to run until the executor or administrator has been appointed, has the weight of authority with it. Plaintiff here claims that, since this is an action for conversion of the property of decedent after the death of the latter, the cause of action did not arise or exist, so that the statute of limitations could not begin to run against the cause of action until an administrator was appointed who could bring suit. In 21 Am. Jur., Executors and Administrators, § 902, where the conflict of authority is discussed, it is said:

"The decisions are not in accord upon the question of the time when the statute of limitations begins to run where no cause of action accrues prior to the death of the party entitled. One view is that the statute does not commence to run on a cause of action accruing after death until administration is granted. This view appears to rest on the theory that a cause of action does not exist unless there is a person in existence capable of suing or of being sued. But this distinction has been criticized. There is no more reason, it is declared, for tolling the statute in such a case than when the cause of action accrues in the lifetime of the decedent, for otherwise the persons interested have the full period of limitations in which to obtain letters and commence action."

This is a possessory action. In such a case, the rule seems to be that the statute begins to run from the time when the representative is entitled to possession and to sue therefor. Arnold v. Arnold, 35 N. C. 174, 55 Am. D. 434.

Since we have disposed of the case on its merits, it is unnecessary at this time to decide whether plaintiff's claim is barred by the statute of limitations.

Order reversed and judgment ordered for defendant Anna Fischer.

